HCA–The Healthcare Company,
Plaintiff,

v.

Mattie CLEMMONS, Dairyland Insurance Co., and Sentry Insurance, A Mutual Co. d/b/a Sentry Claim Service, Defendants.

No. 5:00–CV–476–1(WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 19, 2001.

Elizabeth F. Thompson, Macon, GA, John M. Russell, Thomas H. Lawrence, Lawrence & Russell, L.L.P., Memphis, TN, for plaintiff.

Lester Zack Dozier, Jr., Macon, GA, Hall Forbes McKinley, III, Andrew D. Horowitz, Atlanta, GA, for defendants.

## ORDER

OWENS, District Judge.

This matter is before the Court on Plaintiff Motion for Summary Judgment. Plaintiff brought claims against Defendants pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq,* to enforce the terms of a medical benefits plan ("the Plan") for which Plaintiff is the fiduciary. Plaintiff contends that it is entitled to a recover a portion of the money it paid to Defendant Clemmons in medical benefits pursuant to the Plan. Defendants contend that Plaintiff is not entitled to a recovery of the money sought and that

Defendants are therefore entitled to summary judgment. After careful consideration of the parties' motions and the applicable statutory and case law, the Court enters the following Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Mattie Clemmons was injured in an automobile accident on or about January 18, 1999. Clemmons sought recovery from the at-fault party, Dantando Anthony, through a policy insured by Defendants Sentry and Dairyland. In the interim, Clemmons received $28,146.63 in medical benefits pursuant to the HCA medical Plan which is an ERISA-covered employee welfare benefit plan [1].

The Plan contains a provision regarding its right of recovery and reimbursement for money paid to beneficiaries of the Plan. The Plan [2] provides that

As soon as the plan pays benefits for a covered expense, Columbia/HCA is entitled to all rights of recovery you may have against another party who may be responsible for making payment to you due to your illness or injuries. These rights also extend to benefits which may be payable to you by your own auto-insurer through any type of medical or uninsured/underinsured motorist coverage.

If you recover any charges for covered expenses from a third party (for example, as a result of a lawsuit), the amount of the benefit which this plan will pay will be reduced by the amount you recovered. If benefits have already been paid, you are required to reimburse the plan administrator.

The plan's rights to recovery and reimbursement are a first priority claim and will be paid before any other claim for damages, even if the total amount of the recovery is not sufficient to reimburse or compensate you in entirety for the damages. The plan is also not required to pay legal fees you may incur in pursuing the damage claim. The plan is entitled to the full right of recovery regardless of any admission of liability by the third party or regardless of whether the settlement identifies the Medical Plan benefits. The plan has a right to recover plan benefits from any and all settlements of judgments, even those as designated as "pain and suffering" or "non-economic damages."

Legal action to recover benefits cannot be taken more than three years after the deadline for filing a claim.

Several months after Defendant Clemmons received medical benefits through this Plan, Thomas Lawrence, counsel for HCA, contacted James Moehring, a representative of Defendants Sentry Insurance and Dairyland Insurance. Lawrence learned that Sentry was willing to pay $15,000 in policy limits to resolve Defendant Clemmons' personal injury claims against its insured. Lawrence explained to Moehring that HCA would be willing to split the $15,000 three ways with $5,000 being paid to Clemmons, $5,000 to Clemmons' attorney and $5,000 to the Plan. Lawrence further explained that if all parties were not amenable to this arrange-

---

1. Although Defendants have asserted that the plan is not covered by ERISA, they have completely failed to show, pursuant to Federal Rule of Civil Procedure 56(e) and (f), how the plan is not an ERISA plan. The affidavit submitted upon personal knowledge by Bob Schmitt shows that the plan is in fact covered by ERISA. Ex. A to Pl's.Mem. in Supp. of the Mot. for Summ.J. Additional discovery is therefore not necessary on this or any other issue and the request for the same is denied.

2. The pertinent provisions of the Plan are attached to Plaintiff's Motion for Summary Judgment as Exhibit A–1.

ment HCA would take over Clemmons' claims pursuant to the Plan's subrogation provision and settle its claims directly with Sentry.

As part of this offer, Lawrence requested that Moehring place HCA's name on any settlement check he forwarded to Clemmons' attorney, Zack Dozier, to prevent the attorney from disbursing the settlement funds without resolving Plaintiff's claim to the funds. Lawrence explained that if the parties were not agreeable to this suggestion, he would be required to initiate litigation immediately against Sentry's insured and Clemmons to enforce the Plan's subrogation and reimbursement provisions. Lawrence contends that Moehring agreed to this suggestion and stated that he would place HCA's name on any settlement check. Lawrence immediately sent Moehring a confirmatory letter[3] dated January 7, 2000 outlining this conversation.

There was apparently no communication between the parties regarding this transaction until June 15, 2000. On June 15, Lawrence learned that Sentry, on behalf of Dairyland, had settled Clemmons' claims and that Clemmons' attorney had forwarded the settlement to Clemmons. Lawrence learned during a subsequent telephone conversation with Moehring that sometime after January 7, 2000, Clemmons had agreed to indemnify Sentry in exchange for Moehring agreeing not to place HCA's name on the settlement check.

Plaintiff has moved for summary judgment and contends that the Plan entitles it to full reimbursement from the settlement proceeds for money paid to Defendant Clemmons pursuant to the Plan. Plaintiff further urges this Court to impose a constructive trust against the funds paid by Sentry and Dairyland and order Sentry and Dairyland to provide restitution to the Plaintiff. Plaintiff contends that Sentry and Dairyland should be held jointly and severally liable for the money owed to Plaintiff because of their failure to honor the agreement to make Plaintiff a co-payee on the settlement check. Defendants contend[4] that (1) this Court does not have subject matter jurisdiction over Plaintiff's claims, (2) the "make whole" doctrine prohibits any recovery by Plaintiff in this action, (3) the principles of laches and unclean hands prevent recovery in this action and (4) the common fund doctrine entitles Clemmons to a reduction for the attorney's fees and expenses she paid in connection with her underlying personal injury claim.

## II. MATERIAL FACTS NOT IN DISPUTE

—On January 18, 1999, Defendant Mattie Clemmons was involved in an automobile accident with Dantando Anthony, Sentry and Dairyland's at-fault insured;

—The policy under which this insured was covered provided bodily injury limits of $15,000 per person/$30,000 per occurrence;

—At this time, Defendant Clemmons was a beneficiary in an employee welfare benefit plan insured by Plaintiff HCA;

—Clemmons received $28,146.63 in medical benefits from the Plan for the injuries sustained in the automobile accident;

—In January of 2000, Tom Lawrence, Plaintiff HCA's representative, contacted Jim Moehring, Defendant Sentry's representative, about including

---

**3.** Attached to Plaintiff's Motion for Summary Judgment as Exhibit B-1.

**4.** These are generalized statements of Defendants' many assertions of non-liability. The defenses not addressed in this Order are individually and collectively without merit.

HCA on any settlement check issued to Clemmons;

—Clemmons' attorney Zack Dozier was contacted about this suggestion and Dozier informed Moehring that he thought it would violate Georgia insurance law to include an insurer as co-payee on a settlement check;

—On or about January 14, 2000, Dozier told Moehring that Clemmons would accept Sentry's $15,000 policy limits in exchange for a full release of its insured;

—This settlement agreement was finalized some time before June 2000.

## III. DISCUSSION

### A. SUBJECT MATTER JURISDICTION

■ Defendants contend that this Court does not have subject matter jurisdiction to consider the claims in this case because the Plaintiff is seeking monetary relief: i.e., legal "damages." Defendants contend that ERISA only provides for equitable relief and therefore Plaintiff's claims have no merit. Although monetary relief is typically considered a form of legal relief, the claims in this case are equitable in nature. In *Blue Cross & Blue Shield of Alabama v. Sanders*, the Eleventh Circuit Court of Appeals held that when a plaintiff seeks "specific performance of the reimbursement provision of [an ERISA] Plan," the claim is essentially equitable in nature. *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1352 n. 5 (11th Cir.1998). The court found that equitable

remedies were appropriate in this type of action because "ERISA preemption would have precluded Blue Cross from suing the [defendants] at law in state court." *Id.* (citation omitted). Likewise, in the case at bar, there is subject matter jurisdiction to consider Plaintiff HCA's claims because HCA seeks specific performance of the reimbursement provision of the Plan pursuant to which Defendant Clemmons received medical benefits.

### B. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1358 (11th Cir.1999) (citing Fed. R.Civ.P. 56(c)). "In making this determination, we review the record, drawing all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citing *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir.1996)). Applicable substantive law identifies what facts are material. *U.S. v. 1419 Mount Alto Road,* 830 F.Supp. 1476 (N.D.Ga.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The applicable substantive law in this case is the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

### C. SUBSTANTIVE CAUSES OF ACTION

■ Plaintiff HCA brings this action pursuant to Title 29, U.S.C. § 1132(a)(3)[5],

---

**5.** Although Defendants contend that several state laws prohibit Plaintiff's recovery in this case, the laws cited by Defendants are preempted by ERISA because the plan is a self-funded plan and is therefore exempt from state laws that regulate insurance. *Blue Cross & Blue Shield v. Sanders,* 138 F.3d at 1356. Accordingly, ERISA is the only substantive law applicable to this case.

which provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Plaintiff is a fiduciary of a plan as described in this statute and Defendant Clemmons is a participant/beneficiary of the same type of plan. *See* 29 U.S.C. §§ 1002(7), (21). As noted, *supra*, Plaintiff's claim seeking partial reimbursement for proceeds paid pursuant to an ERISA-covered plan is a proper cause of action under these statutes. *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1352 n. 5 (11th Cir.1998).

HCA contends that pursuant to this statute it is entitled to a reimbursement for part of the money paid to Defendant Clemmons as a result of her injuries sustained in the automobile accident. HCA asserts that this reimbursement should come from the proceeds of the $15,000 settlement reached with the tortfeasor's insurance company, Defendants Sentry and Dairyland. Defendants contend that the "make whole" and "common fund" doctrines preclude all or at least a portion of the recovery to which HCA claims it is entitled. That is, Defendant Clemmons was not "made whole" for her injuries because the $15,000 she recovered from Defendants Sentry and Dairyland did not fully compensate her for the losses she sustained in the accident. Further, Defendants argue that the "common fund" doctrine imposes on this Court the duty to reduce any recovery awarded to HCA for the reasonable amount of attorneys fees expended by Clemmons' attorney in recovering the $15,000 from Sentry and Dairlyland. These arguments are addressed separately below.

## 1. The "Make Whole" Doctrine

Under the "make whole" doctrine, "an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the excess received over the total amount of his loss." *Cagle v. Bruner*, 112 F.3d 1510, 1520 (11th Cir. 1997). The "make whole doctrine exists because parties to an insurance contract do not always explicitly address what happens when the insurer pays less than the insured's total loss, and the insured achieves a recovery from a third party." *Id.* at 1522. "The effect of the doctrine is to imply into ambiguous insurance contracts (including ERISA plans) a default provision governing that situation." *Id.* "Either the make whole doctrine is implied into the plan (the default scenario), or it is not (if there is clear language rejecting it)." *Id.* An ERISA plan overrides the make whole doctrine if it includes language "specifically allow[ing] the Plan the right of first reimbursement out of any recovery [the participant] was able to obtain even if [the participant was] not made whole." *Id.* (citation omitted).

The Plan in this case clearly contains language indicating the participants' decision to opt out of the make whole doctrine. The pertinent clause directs that

> The plan's rights to recovery and reimbursement are a first priority claim and will be paid before any other claim for damages, even if the total amount of the recovery is not sufficient to reimburse or compensate you in entirety for the damages. The plan is also not required to pay legal fees you may incur in pursuing the damage claim.

Therefore, this Plan specifically addresses and rejects the "make whole" doctrine. The language is quite clear that the Plan would be entitled to a "first priority claim" to be paid before any other claim *even if*

*the total amount of the recovery was not sufficient to reimburse Defendant Clemmons for her out-of-pocket medical expenses.* Accordingly, the "make whole" doctrine does not preclude recovery in this case.

### 2. The "Common Fund" Doctrine

Defendants contend that any recovery to which HCA may be entitled should be reduced pursuant to the "common fund" doctrine. "The common fund doctrine permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Great West Life and Annuity Ins. Co. and Chicago Roll Co. v. David Moore, et al.,* 133 F.Supp.2d 677 (N.D.Ill.2001) (citation omitted). One of the leading cases on attorneys' fees in this area has held that

> The use of the "common fund" theory most often occurs in actions seeking equitable relief where specific statutory guidelines underlying the award of attorneys fees are not available. See, Wright & Miller, Federal Practice and Procedure: Civil § 2675 (1973).
> We believe that ERISA § 502(g), 29 U.S.C. § 1132(g), as a specific statutory authorization of attorneys fees, will, in most cases, eliminate the necessity which gave rise to the common fund exception to the American rule. By enacting a statutory authorization for award of attorneys fees, we believe Congress intended that the offending party bear the costs of the award, rather than non-culpable, non-party plan participants.

*Eaves v. Penn,* 587 F.2d 453, 464–64 (10th Cir.1978).

The common fund doctrine is not applicable in this ERISA case because there are clear statutory guidelines for attorney fees found at 29 U.S.C. § 1132(g). Further, the Plan specifically states that Clemmons would be responsible for any legal fees she incurred pursuing the damage claim against the third-party tortfeasor. Therefore, the common fund doctrine does not provide any relief to Defendants either.

### 3. Liability of Defendants Sentry and Dairyland

Plaintiff requests this Court to hold Defendants Sentry and Dairyland jointly and severally liable for any money owed to Plaintiff by Defendant Mattie Clemmons. Plaintiff attempts to convince the Court that Sentry and Dairyland are somehow fiduciaries with respect to the Plan in this case. However, precedent from the Eleventh Circuit indicates otherwise.

In an analogous case, *Chapman v. Klemick,* the Eleventh Circuit Court of Appeals held that an attorney who represented a plan beneficiary was not a fiduciary as defined in ERISA. *Chapman v. Klemick,* 3 F.3d 1508 (11th Cir.1993). In *Chapman,* Wilson, the ERISA plan beneficiary, was injured in an auto accident and incurred $28,000 in medical expenses which were paid by the plan. Wilson signed a subrogation agreement with the plan in order to obtain payment of his medical expenses. Wilson then settled the tort claim against the at-fault party for $25,000. When Wilson failed to reimburse the plan, the plan sued his attorney claiming that the attorney was liable as a fiduciary under ERISA because he had "decided how to allocate the monies from the settlement check." *Id.* at 1510. The suit was based on the argument that the attorney had mishandled funds that were in effect assets of the plan based on the subrogation agreement which gave the plan a right of recovery from any money awarded to Wilson.

In *Chapman,* the court made it clear that subrogation agreements would not au-

tomatically convert settlement proceeds into plan assets as urged by the plaintiff. *Id.* at 1510. The court further held that the attorney in that case could not be considered a fiduciary as defined in ERISA. The court cited other case law which had held that a bank which had acted upon collateral pledged by an ERISA plan and the law firm that had advised the plan's managers were not fiduciaries under ERISA. *Id.* (citing *Useden v. Acker*, 947 F.2d 1563 (11th Cir.1991)). The court found that if a bank and law firm with a contractual relation to a plan were not fiduciaries then an attorney who owed duties only to a plan participant was not an ERISA fiduciary. *Id.*

The case at bar involves similar facts. Sentry/Dairyland is the liability insurer for the at-fault party who caused Clemmons' injuries. Sentry's primary duties in this case involved its duty to protect its insured from personal exposure to liability on Clemmons' personal injury and property damage claims. Accordingly, Sentry was placed in the same position with respect to the HCA Plan as the attorney was to the plan in *Chapman*. Sentry had pre-existing duties owed to its insured that would have conflicted with any duties purportedly owed to the Plan in this case. The *Chapman* court correctly noted that "imposing fiduciary status willy-nilly would make banks and law firms extremely wary of ERISA plans as customers and clients." *Chapman*, 3 F.3d at 1511. Likewise, imposing fiduciary status on Sentry/Dairyland would render it difficult for injured parties like Clemmons to negotiate future claims with third-party tortfeasors' insurance companies. If the court of appeals would not hold Clemmons' attorney responsible as a fiduciary to the Plan in this case, then Sentry/Dairyland should not be considered fiduciaries either. Their connection to the Plan in this case is far more remote than that of Clemmons' attorney.

Likewise, this Court is not in a position to impose upon Sentry/Dairyland a constructive trust for the proceeds of the settlement disbursed to Clemmons. A recent Supreme Court case addressed this issue in *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (nonfiduciary held liable for ERISA-prohibited transactions with fiduciary of an ERISA plan). In *Harris Trust*, the court held that

> Whenever the legal title to property is obtained through means or under circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right and takes the property relieved from the trust.

*Id.* at 251, 120 S.Ct. 2180 (citations and internal quotations omitted). Equity does not require or even permit a constructive trust on the funds at issue in this case. Sentry/Dairyland no longer retain any control over the money disbursed to Clemmons. This Court has reached the property in the hands of the subsequent holder, Clemmons, and that is the extent of this Court's power in this situation. Unlike the defendants in *Harris Trust*, Defendants Sentry/Dairyland in this case did not engage in prohibited transactions *with Plaintiff* HCA. Therefore, the principles of trust law applied in that case are not applicable in the case at bar.

## IV. CONCLUSION

For these reasons, **HCA's Motion for Summary Judgment is GRANTED in part and DENIED in part.** Summary judgment is hereby **GRANTED** regarding the claims against Defendant Mattie Clemmons and she is ordered to pay the following: (1) $15,000 for reimbursement of a portion of the medical benefits paid pursuant to the Plan, including the appropriate amount of post-judgment interest as posted in the Clerk of Court's office, and (2) to pay reasonable attorney's fees and costs in accordance with 29 U.S.C. § 1132(g) and *Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir.2001). Plaintiff has 30 days from the date of this Order to file a motion for attorney's fees that is fully supported by appropriate affidavits and other relevant documentation. Defendant Clemmons will have 30 days from the date of the motion to respond thereto. Plaintiff will then have 10 days in which to file any necessary reply.

Summary judgement is **DENIED** as to the claims against Defendants Sentry and Dairyland. Because ERISA and Eleventh Circuit case law provide no remedy in this situation against these particular Defendants, they are entitled to judgment as a matter of law.